115 N.J. Super. 278 (1971)
279 A.2d 138
TRAP ROCK INDUSTRIES, INC., A NEW JERSEY CORPORATION, APPELLANT,
v.
JOHN C. KOHL, COMMISSIONER OF TRANSPORTATION, AND JAMES R. SCHUYLER, STATE HIGHWAY ENGINEER, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 15, 1971.
Decided June 30, 1971.
*279 Before Judges KILKENNY, HALPERN and LANE.
Mr. Justin P. Walder argued the cause for appellant (Messrs. Schapira, Steiner & Walder, attorneys).
Mr. Stephen Skillman, Assistant Attorney General, argued the cause for respondent (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney; Messrs. Alfred L. Nardelli, Roger L. Hillman and Courtland T. Babcock, II, Deputy Attorneys General, on the brief).
Mr. Adrian M. Foley argued on behalf of amicus curiae New Jersey Heavy, Highway and Construction Industry Advancement Fund (Messrs. Hughes, McElroy, Connell, Foley & Geiser, attorneys; Mr. Theodore W. Geiser, of counsel; Mr. Richard D. Catenacci, on the brief.)
The opinion of the court was delivered by KILKENNY, P.J.A.D.
On May 7, 1971 the State Commissioner of Transportation made a determination that "Michael J. Stavola/Trap Rock Industries, Inc., be suspended from bidding until satisfactory explanations for the items contained in the indictment are adduced to satisfy this Department that Michael J. Stavola/Trap Rock Industries, Inc., possess the moral integrity to qualify as a bidder."
Trap Rock Industries, Inc., prosecutes this appeal from that administrative determination. This company is a contractor and had been prequalified with the Department of Transportation prior to the above suspension.
The indictment referred to in the order of suspension, a copy of which was attached to the Commissioner's determination, charged that Michael J. Stavola and Joseph Martinelli, *280 between October 19, 1970 and March 17, 1971, did in four-named municipalities in New Jersey, conspire in violation of N.J.S.A. 2A:98-1 and 2A:98-2 to commit three specified crimes. The purported crimes constituting the basis of the alleged conspiracy all related to efforts made by Stavola and Martinelli to (1) induce Detective James Sweeney of the New Jersey State Police to intercede for Michael J. Stavola, defendant in a pending indictment for assault and battery upon a police officer, in violation of N.J.S.A. 2A:85-1 and 2A:85-14;(2) offer a bribe to Detective Sweeney in the same matter, and (3) obstruct justice by Sweeney's endeavours to obtain a favorable disposition of the police officer assault and battery indictment.
The second count of the indictment charged the same defendants, in relation to the same matter, with violations of N.J.S.A. 2A:85-1, 2A:85-5 and 2A:85-14. The third count charged attempted bribery of Detective Sweeney for the same purpose, in violation of N.J.S.A. 2A:85-1 and 2A:85-14. The fourth count charged an obstruction of justice, all in relation to the same subject matter, contrary to N.J.S.A. 2A:85-1 and 14. In brief, the four-count indictment involves the same subject matter, but charges the alleged offense in various aspects.
Trap Rock Industries, Inc., and Michael J. Stavola, its principal officer and stockholder, were notified by the Commissioner and given an opportunity to present any additional information at a hearing which might tend to substantiate the existing classification of being a "responsible" bidder. Stavola denied the charges set forth in the indictment but declined to elaborate thereon.
At the hearing no proof was received by the Commissioner as to the truth of the recitals in the indictment. The minutes of the grand jury were not disclosed to or examined by the Commissioner.
In brief, disqualification from bidding has been visited by the Commissioner upon this corporate public contractor solely on the basis of the indictment itself against its principal *281 officer and 80% stockholder and Stavola's failure to explain satisfactorily and justify the unproven recitals in the indictment. There is no question as to the competency of Trap Rock Industries, Inc., to perform any public contract which might be awarded to it. The company has the equipment, the experience, the supervisory and other personnel, financial stability and ability to post any required performance bond, all as demonstrated by a previous determination of qualification.
The reason for suspending the right to bid and enter into a contract with the State for public work is the Commissioner's determination that the indictment, not satisfactorily explained away at an administrative hearing, is sufficient evidence of a lack of "moral integrity" to deprive one of being classified as a "responsible" bidder.
We pass the issue of whether a corporate entity may be deemed lacking in moral integrity, if its principal officer and controlling stockholder, a separate legal entity, is justifiably found to be lacking in moral integrity. We shall assume in this case, as did the Commissioner, that protection of the public interest warrants a "piercing of the corporate veil."
So, too, we proceed upon the correctness of the rule laid down by us in Mal-Bros. Contracting Co. v. Kohl, 113 N.J. Super. 144, 147 (App. Div. 1971), certif. den. 58 N.J. 94 (1971), that determining the meaning of "responsible," when related to a bidder for a public contract, embraces the factor of "moral integrity." But Mal is factually distinguishable. There, we found that "there was substantial competent and relevant evidence in the record to support the Commissioner's finding of a lack of moral integrity on the part of Mal." Ibid. We specified the three principal items supporting that conclusion. We particularly noted in Mal (at 147), "The Commissioner's determination was not based on hearsay or other improper evidence."
In the instant case the Commissioner's determination is based essentially, if not entirely, upon the hearsay recitals *282 in the indictment, which in turn depend for their reliability upon grand jury testimony of a witness or witnesses whose credibility has not been tested.
The Commissioner relies upon the policy of administrative suspension of public employees upon return of indictments against them, citing De Marco v. Board of Chosen Freeholders of Bergen County, 21 N.J. 136 (Sup. Ct. 1956). The suspension of a police officer without pay pending favorable disposition of the indictment against him is distinguishable from the suspension of a contractor from bidding on public work. When cleared and reinstated, the police officer is entitled to reimbursement for his lost wages. But how is the disqualified contractor to be reimbursed when and if he is cleared? Then, too, there are the irretrievable losses suffered perhaps by his employees. It is alleged that Trap Rock Industries has from 500 to 800 employees and its average weekly payroll ranges from $110,000 to $125,000. In addition, there is the loss through lack of use of equipment.
The Commissioner recognized that an indictment is evidence only of the fact that a charge has been made; it in no wise establishes the truth of the charge or the presence of sufficient legal proof thereof. It is not uncommon for entirely innocent persons to be indicted. State v. Orecchio, 16 N.J. 125, 132 (1954). The presumption of innocence is deeply ingrained in our law. It is worthy of recognition before a State administrative agent as it is in a court of criminal justice. Stavola and the corporation, Trap Rock Industries, Inc., were entitled to application of that principle in the instant situation.
The determination of the Commissioner suspending Stavola/Trap Rock Industries, Inc., from the classified list of "responsible" bidders, is reversed and the Commissioner is directed to reinstate them to their former "qualified" position.